Latrobe, *et al. vs.* Western Telegraph Co. of Balto. City, *et al.*

---

John H. B. Latrobe, and others *vs.* The Western Telegraph Company of Baltimore City, and others.

*Railroad and Telegraph Companies—Construction of Agreement between Corporations—Renewal of Charter under Act of 1868, ch. 471—Construction of sec. 76 of said Act—Surrender of Old Charter—Transfer of Property to the New Corporation—Act of 1878, ch. 93—Retroactive legislation.*

On the 5th of February, 1847, a telegraph company was incorporated by the Legislature of Maryland, by the name of the W· T. Co. to endure for thirty years. In the year 1853, this corporation made an agreement with the B. & O. R. R. Co. By the first section of this agreement the W. T. Co. acquired a license, so long as it should exist as a telegraph company, to erect and maintain a line of telegraph upon and within the limits. The ninth and eleventh sections of the agreement are as follows: "(9) In the event of the dissolution of the said telegraph company, or a suspension of operations on their part, either involuntary or in consequence of legal process of any kind, then the said railroad company shall be at liberty, and are authorized

Latrobe, *et al. vs.* Western Telegraph Co. of Balto. City, *et al.*

to take charge of the said telegraph line for their own purposes, with the appurtenances, until the said telegraph company shall resume active operations; and it is expressly understood that no interest which the said telegraph company may have in said line shall be assignable, so as to affect or impair in any manner the rights of the said railroad company under these articles of agreement." "(11) And it is agreed that the ownership of the said telegraph company herein before recognized, of the posts and wires of the telegraph, is to be taken as subject to the performance by the said telegraph company and its assigns of all stipulations herein contained affecting said telegraph company." The corporate existence of the W. T. Co. was to expire by its own limitation on the 4th day of February, 1877. On the 8th day of January of that year said company was incorporated anew under the provisions of the Act of 1868, ch. 471, under the name of "The W. T. Co. of Baltimore City." Section 76 of that Act provides that the new corporation shall be subject to all the provisions of the Act, and entitled to all the powers and privileges conferred by it, so far as applicable; and that the former charter shall be deemed to be surrendered "and all the property and assets belonging to the said former corporation, of whatsoever nature and description, and all the debts and liabilities of said former corporation, of whatever nature and description, shall * * * be devolved upon the said new corporation, which shall for this purpose be regarded as substituted by operation of law in the room and stead of the former corporation." By the Act of 1878, ch. 93, the W. T. Co. was revived, and its corporate existence was continued for an additional period of thirty years. HELD :

1st. That with the surrender of its charter the old corporation ceased to exist.

2nd. That although the property and assets of the old corporation were devolved upon the new corporation, the separate corporate existence of the two bodies politic was distinctly marked by the declaration of the statute that the former should be deemed to be surrendered.

3rd. That as by the first section of the agreement of 1853, the right of the telegraph company to erect and maintain a line of telegraph was to continue as long as it should exist as a telegraph company, such right did not continue after its corporate existence was extinguished by the proceedings mentioned.

4th. That after the surrender of the charter of the telegraph company, by the necessary effect of the terms of the ninth and eleventh sections of said agreement the B. & O. R. R. Co. became entitled to the property of said company, mentioned in those sections.

5th. That although all the property of the old corporation was vested in the new one, the property affected by the agreement ceased to belong to the old corporation, because by its own contract it had been conveyed to the B. & O. R. R. Co.

6th. That before the Act of 1878, ch. 93, reviving the W. T. Co. and continuing its corporate existence, was passed, the right of the B. & O. R. R. Co. to this telegraph property had vested by virtue of a valid contract, and the Legislature had no power to divest this right by a retroactive statute.

7th. That as the W. T. Co. of Baltimore City, had no title to said property its stockholders could not maintain a bill in equity based on the action of certain parties which they alleged had injured them in their rights as such stockholders.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*John E. Semmes*, and *John N. Steele*, for the appellants.

*Charles J. M. Gwinn*, and *George H. Fearons*, for the appellees.

BRYAN, J., delivered the opinion of the Court.

Certain stockholders of the Western Telegraph Company of Baltimore City filed a bill in equity against the corporation and certain of its directors, and against The Western Union Telegraph Company. The principal averments of the bill of complaint briefly stated, are as follows: That the Western Telegraph Company of Baltimore City

was the owner of a line of telegraph posts and wires, and was entitled to use them for the transmission of messages; that the Baltimore and Ohio Railroad Company unlawfully took possession of said line; that a suit in equity was brought by the first named corporation against the Baltimore and Ohio Railroad Company to establish its title to the telegraph line; that the Western Union Telegraph Company purchased the rights of the Baltimore and Ohio Railroad, and received from it the possession of the telegraph line, posts and wires, and being the holders of a majority of the shares of stock in the Western Telegraph Company of Baltimore City, it intervened in the suit in equity, and prevented the prosecution of it to a decision in the Court of last resort.

We will commence the consideration of the questions in this case by examining the title to the telegraph line, posts and wires set up as the basis of the complainants' prayer for relief. The Legislature, on the fifth day of February, 1847, incorporated the Western Telegraph Company, and, in the seventeenth section of the Act of incorporation, provided that it should endure for thirty years from its passage. In the year 1853, this corporation made an agreement with the Baltimore and Ohio Railroad Company, and another agreement in 1855; both of them relating to the telegraph line and its accessories which are in controversy in this suit. By the first section of the agreement of 1853 the Telegraph Company acquired a license, so long as it should exist as a telegraph company, to erect and maintain a line of telegraph upon and within the limits of the railroad. The second section bound the Railroad Company to build a line between Ellicotts' Mills and Wheeling along the track of the road, and stipulated that when completed, it should be the property of the Telegraph Company. The ninth and eleventh sections are as follows:

9. "In the event of the dissolution of the said telegraph company, or a suspension of operations on their

part, either involuntary or in consequence of legal process of any kind, then the said railroad company shall be at liberty, and are authorized to take charge of the said telegraph line for their own purposes, with the appurtenances, until the said telegraph company shall resume active operations, and it is expressly understood, that no interest which the said telegraph company may have in said line shall be assignable, so as to affect or impair in any manner the rights of the said railroad company under these articles of agreement.''

11. '' And it is agreed that the ownership of the said telegraph company, hereinbefore recognized, of the posts and wires of the telegraph, is to be taken as subject to the performance by the said telegraph company and its assigns, of all stipulations herein contained affecting said telegraph company.''

The agreement of 1855 provided for a line from Camden Station to Ellicotts' Mills, and for an additional wire from Camden Station to Cumberland. It will be perceived that by the ninth section of the agreement of 1853, the Railroad Company's right arose in each of two cases; first, the dissolution of the Telegraph Company; and secondly, a suspension of its operations. And if the Telegraph Company should resume active operations, the Railroad Company's right was to cease. The corporate existence of the Telegraph Company would have expired by its own limitation on the fourth day of February, eighteen hundred and seventy-seven. On the eighth day of January of that year, the Western Telegraph Company, by due proceedings, was incorporated under the provisions of the Act of 1868, chapter 471, under the name of The Western Telegraph Company of Baltimore City. The effect of this proceeding must be determined by the terms of the Act. The seventy-sixth section enacts that the new corporation shall be subject to all the provisions of the Act, and entitled to

all the powers and privileges conferred by it, so far as applicable; and that the former charter shall be deemed to be surrendered, "and all the property and assets belonging to the said former corporation, of whatsoever nature and description, and all the debts and liabilities of said former corporation of whatever nature or description, shall * * * * be devolved upon the said new corporation, which shall for this purpose be regarded as substituted by operation of law in the room and stead of the former corporation." With the surrender of its charter, the old corporation ceased to exist. The new corporation, which succeeded it, had a different name; a different period of existence; and different powers; and was subject to different responsibilities. It is true that the property and assets of the old corporation were devolved upon it; but the separate corporate existence of the two bodies politic is distinctly marked by the declaration of the statute that the former charter shall be deemed to be surrendered. The old body passed away, and a new body was created out of the elements which had composed it. Now, as by the first section of the agreement of 1853, the right of the Telegraph Company to erect and maintain a line of telegraph was to continue as long as it should exist as a Telegraph Company, it is impossible to maintain that the right continued after the corporate existence was extinguished by the proceedings which we have mentioned. A similar consequence arises from the ninth and eleventh sections; after the surrender of the charter of the Telegraph Company, by the necessary effect of the terms of these sections, the Baltimore and Ohio Railroad Company became entitled to the property in question. All the property of the old corporation was vested in the new one; but the property affected by the agreement ceased to belong to the old corporation; because by its own contract, it had been conveyed to the Baltimore and Ohio Railroad Company. The Act of 1878,

chapter 93, revived the Western Telegraph Company, and continued its corporate existence for an additional period of thirty years. But before this Act was passed, the right of the Baltimore and Ohio Railroad Company to this telegraph property had vested by virtue of a valid contract. Surely it ought not to be contended that the Legislature had power to divest these rights by a retroactive statute.

As the Western Telegraph Company of Baltimore City had no title to the property in question, the stockholders who filed this bill of complaint are not injured by the action which they impute to the said corporation, and to the Western Union Telegraph Company. The Court below dismissed the bill, and we approve of its decision.

*Decree affirmed, with costs.*

(Decided 30th April, 1891.)